FILED
2009 APR 17 13:05
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | | |
|---|---|---|
| PREMIUM MOTOR CARS, INC., | : | Jointly Administered |
| *Debtor*, | : | Case No. 07-24294 TPA |
| | : | Chapter 11 |
| | | |
| PREMIUM MOTOR CARS, INC. | : | |
| and RONALD W. WOBB, | : | Adversary No. 07-2411 TPA |
| *Plaintiff*s | : | |
| v | : | |
| | : | Related to Document No. 202 |
| CHERYL L. THEISEN, | : | |
| *Defendant.* | : | |

*Appearances*:   William R. Lauer, Esq. for Plaintiffs
James R. Cooney, Esq. for Plaintiffs
William Weiler, Jr., Esq. for Defendant

**MEMORANDUM OPINION AND ORDER**

Defendant, Cheryl L. Theisen ("Theisen") has filed a ***Motion for Summary Judgment*** ("Motion") at Document No. 202, together with an accompanying brief. Plaintiffs Premium Motor Cars, Inc. and Ronald W. Wobb (collectively "Plaintiffs", and individually "Premium" or "Wobb") have filed their ***Plaintiffs' Response to Motion for Summary Judgment*** ("Response"), as well as a brief in opposition to the *Motion*. *See* Document Nos. 205, 206. Arguments on the *Motion* were heard on April 13, 2009.[1]

---

[1] The Court's jurisdiction under *28 U.S.C. §§157* and *1334* has not been at issue. This is a core proceeding pursuant to *28 U.S.C. §157(b)(2)(A)* and *(E)*.

## DISCUSSION

For purposes of resolving a summary judgment motion, *Fed.R.Civ.P. 56* is made applicable to adversary proceedings through *Fed.R.Bankr.P. 7056.* Summary judgment is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Bankr.P. 56(c), Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment is appropriate if no material factual issue exists and the only issue before the court is a legal issue. *Earth Data Int'l of N.C., L.L.C. v. STV, Inc.*, 159 F. Supp.2d 844 (E.D. Pa. 2001); *In re Air Nail Co.,* 329 B.R. 512 (Bankr. W.D. Pa. 2005). The test under *Fed.R.Civ.P.* 56 is "whether the moving party is entitled to judgment as a matter of law." *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

In deciding a motion for summary judgment, the Court must construe the facts in a light most favorable to the non-moving party. *United States v. Isley*, 356 F.Supp.2d 391 (D.N.J. 2004). The moving party, moreover, bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. If this showing is made, no factual issue exists for trial unless the non-moving party identifies sufficient evidence favoring it in regards to the alleged factual dispute such that a reasonable jury could return a verdict in its favor. *See Celotex,* 477 U.S. at 322. Applying the above standards, the Court finds that the *Motion* must be denied. Before giving an explanation for the denial, it is important to establish exactly where this case stands.

Where once there were ten, Theisen is now the sole remaining defendant in the case. Also, although the *Second Amended Complaint* (Document No. 66) sets forth ten different counts, through the combination of the dismissal of the other defendants and the voluntary narrowing of the claims by the Plaintiffs, the case has seemingly been reduced to two basic claims requiring turnover of monies to the estate pursuant to *11 U.S.C. §542*: (1) conversion[2] as to certain payments allegedly received by Theisen without the knowledge or consent of the Plaintiffs (totaling approximately $285,000); and, (2) constructive/ resulting trust as to certain payments allegedly received by her with the knowledge of the Plaintiffs (totaling approximately $378,000). *See Plaintiffs' Supplemental Transfer Chart* (Document No. 213) at ¶7.[3]

Wobb is the owner of Premium, a retail car dealer specializing in the sale of used luxury and high-performance vehicles.[4] Wobb and Theisen met sometime during the 1990s and began a romantic relationship. Theisen moved in with Wobb and the two resided together for a

---

[2] For the sake of clarity, it must be pointed out that the claim of "conversion" being pursued by Plaintiffs here refers to the common law tort of that name. Under applicable Pennsylvania law the definition of the tort of conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *See Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1183 (Pa. Super. Ct. 2007). Money may be the subject of conversion. *See Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).

[3] The Court ordered the Plaintiff to file a *Transfer Chart* (Document No. 176) and then a *Supplemental Transfer Chart* to flesh out exactly what claims and legal theories the Plaintiffs are still pursuing. Plaintiffs also filed a *Trial Memorandum Re Turnover Claims*, Document No. 177, to explain what claims they continued to pursue. The characterization of the claims as stated above is based on the contents of these documents. Going into the argument on the *Motion* the Court believed it possessed a firm grasp of the claims still being pursued by Plaintiffs by virtue of these documents. However, it became apparent at the argument that the exact nature of Plaintiffs' case remains unclear. While the lingering uncertainty is not enough to prevent a ruling on the *Motion*, its existence warrants correction. By separate Order, the Court will therefore require Plaintiffs to file a *Third Amended Complaint* to further clarify their position.

[4] Wobb and Premium have filed separate bankruptcies and separate adversary proceedings against Theisen. The two are being jointly administered because of the close similarity in facts and issues.

number of years, ending in 2007 when apparently, a somewhat acrimonious break-up took place. During much of the time that the two were residing together, Theisen was employed by Premium as the finance/insurance manager. This adversary proceeding concerns various payments that allegedly were made to Theisen from the funds of Wobb or Premium prior to the breakup, with the Plaintiffs claiming the payments are recoverable for the benefit of the bankruptcy estates. With this background in mind, the Court turns to a serial discussion of the arguments for summary judgment made by Theisen and the reasons why the arguments are rejected.

Theisen first argues that summary judgment should be granted as to the conversion claims because: (1) once the allegedly converted funds became commingled with her own money they lost their character as converted funds; and, (2) she obtained the funds with the consent of the Plaintiffs.

As to the first point, Theisen has cited no support for the proposition that a conversion claim must fail if the converted funds have been commingled with legitimate funds. At most, the commingling of converted and legitimate funds <u>might</u> limit the relief that a court could provide to remedy the conversion by eliminating the possibility of the imposition of a trust on the converted funds because they cannot be sufficiently traced. *See, e.g., In re Bogan*, 302 B.R. 517, 523 (Bankr. W.D. Pa. 2003). The Court makes no finding on that issue at this time. However, assuming this scenario to exist, the Court could nevertheless provide relief in the form of a money judgment. Since there are material factual disputes involved and the Court would be able to provide relief if the Plaintiffs prove their case, Theisen's *Motion* must therefore fail on this argument.

As to the second point, Theisen argues that she received some of the funds at issue in the conversion claim with the consent of the Plaintiffs (i.e., her wages from Premium)[5] and that such cannot therefore be the subject of an action for conversion. It is true that under Pennsylvania law money voluntarily paid, in the absence of fraud, duress, or mistake of fact, cannot be recovered. *See, e.g., Kline v. Morrison*, 44 A.2d 267, 269 (Pa. 1945). Nevertheless, Pennsylvania law also provides that a taking of a person's property, with consent, while originally intending to use the property for one purpose but then using it for another purpose, may be a conversion. *See Knuth v. Erie-Crawford Dairy Co-op Ass'n.*, 463 F.2d 470, 478 (3d Cir. 1972), *cert. denied* 410 U.S. 913, *on remand* 58 F.R.D. 646, *affirmed* 487 F.2d 1374.

In this case Plaintiff contends that there was an "understanding" between Wobb and Theisen whereby the latter would be paid more in salary then her position actually merited while the "excess" was to be used by her as part of a common fund to jointly benefit the Parties. Plaintiffs further contend that Theisen took the payments with that understanding but then instead kept the "excess" for her own benefit. Taking these allegations as true, which the Court must do for purposes of the *Motion,* it is possible that a conversion could be established even if the payment was voluntarily made to her. Thus, summary judgment cannot be granted on this ground either.

Theisen next argues that the conversion claims are barred by the applicable two-year Pennsylvania statute of limitations (*42 Pa.C.S.A. §5524*) because the adversary proceeding was not

---

[5] In the documents discussed above at Footnote 3, Plaintiffs had stated that the claim related to Theisen's Premium wages was "based solely upon a constructive or resulting trust theory." Document No. 177 at ¶D. However, at the argument Plaintiffs' Counsel characterized the claim related to the wages as a conversion. *See Audio Transcript* of proceeding held April 13, 2009 at 2:16:23. This is an example of the uncertainty requiring a *Third Amended Complaint* to be filed.

filed until August 23, 2007, even though Plaintiffs have acknowledged engaging an accounting firm in 2005 to "examine and trace" Premium funds (citing the *Second Amended Complaint* at ¶38). Theisen does not specify any date in 2005 when the accounting firm was retained. Plaintiffs respond by claiming that, although they hired the accountant in "the summer of 2005" they did not learn the results of the accountant's analysis until June 28, 2007. Plaintiffs also contend that Theisen's job duties at Premium prior to her termination in late June 2007 included receipt and review of all company checking records, which effectively shielded Plaintiffs from acquiring any knowledge as to the unauthorized payments being made to her. Because of the foregoing factual record, the applicability of the statute of limitations to bar any claims in this case will necessarily implicate the discovery rule which provides that the statute does not begin running until the plaintiff knows or reasonably should know that he has been injured by the conduct of another. Many of the allegedly converted payments to Theisen pre-date August 23, 2005, and would thus be barred unless "saved" by operation of the discovery rule.

The Third Circuit has instructed that courts must be very cautious before granting summary judgment on statute of limitations grounds when there is a discovery rule issue and the alleged wrongdoer was in a fiduciary position with respect to the plaintiff, to the point of requiring that there was a "smoking gun" that should have alerted the plaintiff to the defendant's behavior. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 341-42 (3d Cir. 2004). Theisen has not pointed to the existence of any such smoking gun in this case. Instead, the Parties in the present matter have posited reasonable but competing versions of the "facts" as to whether the discovery rule should be found to have tolled the running of the statute of limitations. The Court finds this to be a material factual dispute which must be resolved only after trial and not by way of summary judgment.

Theisen next argues that summary judgment should be granted with respect to the constructive/resulting trust claims because: (1) the Debtors cannot show the existence of a "confidential relationship" or "undue influence" between the Parties; (2) she gave "value" in exchange for all the funds she received; and, (3) the allegation that there was a verbal agreement between the Parties with respect to the disposition of the transferred funds prevents the finding of unjust enrichment which is necessary before such a trust can be imposed. For purposes of summary judgment determination, the first two of these arguments are not persuasive. The third argument does have some merit but for reasons explained below the Court will nevertheless deny summary judgment as to that point as well.

With respect to the first point, the question whether a confidential relationship existed is usually a question of fact to be determined by weighing all the particular factors present in the case. *See Stauffer v. Stauffer,* 351 A.2d 236 (Pa. 1976). Plaintiffs have made sufficient allegations concerning the nature of the relationship between Theisen and Wobb that, if proven, could possibly establish that a confidential relationship existed. *See Second Amended Complaint* at ¶¶15, 18, 21, 34, and 37; *O'Connor v. Fellman*, 39 Pa. D. & C. 2d 51, 55 (1966). Theisen admits the basic allegation that she and Wobb resided together for many years in a romantic relationship but denies many of the particulars concerning Wobb's alleged dependence on her. *See, e.g.*, Theisen's *Answer to Second Amended Complaint* at ¶¶15, 18, Document No. 75. Given the intensely fact-driven inquiry that must go into answering the question of the existence of a confidential relationship, the

Court will not grant summary judgment on this basis.[6]

Turning to Theisen's second point as to the constructive/resulting trust claims, she argues that she gave "value" for the payments she received that are the subject of these claims, and that the existence of such value precludes the claims. To the extent that Theisen gave full value for any such payments she received, the Court would agree that she would be protected from the imposition of a trust based on unjust enrichment. However, there are a couple of problems with Theisen's argument under the facts of the case. For one thing, it is not readily apparent that she gave any value with respect to certain of the payments at issue, for instance, the payments made by Plaintiffs toward the Florida condominium titled in her name. For another, even as to payments for which she clearly did give some value, for example her salary at Premium, if such value were found to be inadequate she would not necessarily be protected if she were found to have obtained the excessive payment by abuse of a confidential relationship. *See, e.g., Hartzell v. Whitmore,* 115 A. 840 (Pa. 1922) (purchaser at sheriff sale found to hold property in trust where he obtained property at price greatly below real value through misrepresentations). For these reasons Theisen's argument must fail. She has not met her burden of proof for purposes of summary judgement adjudication. Plaintiffs, as the party without the burden of proof on the issue of value, has no obligation to produce evidence negating Theisen's claims in this regard. *In re Air Nail Co., supra,* 329 B.R. at 528.

---

[6] Despite the long period allowed for discovery in this case and the many factual issues involved in making the determination of whether a confidential relationship existed, neither side submitted any answers to written discovery or deposition testimony to be considered by the Court in connection with the *Motion*. Indeed, although the Court does not know for sure, there is some indication that no witnesses were deposed during discovery, not even the obviously key figures, Wobb and Theisen. *See* Document Nos. 124, 127. The Court is thus largely adrift as to the factual disputes of the case in deciding this *Motion*, having only the factual allegations in the pleadings and affidavits of Wobb and an expert witness of the Plaintiff, James Fellin, to go by. Unsubstantiated assertions of "fact" made by Counsel at argument or in a brief do not constitute evidence for purposes of consideration by the Court in deciding motions for summary judgment. *See Versarge v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). *See also In re Fabrizio*, 369 B.R. 238, 246-27 (Bankr. W.D. Pa. 2007) and the cases cited therein. Nor does the Court have any obligation to scour the record to discover material facts not in dispute to support Theisen's *Motion*. *Dawley v. Erie Indemnity Co.*, 100 Fed. Appx. 877, 881 (3d Cir. 2004).

Theisen's final point on the constructive/resulting trust claims is that such claims are incompatible with the Plaintiffs' allegation that there was a verbal agreement between the parties with respect to disposition of the funds that are the subject of those claims because Pennsylvania law does not permit a remedy for unjust enrichment where a contract exists between the parties. Theisen's point in this regard is well-taken. *See, e.g., Diener Brick Co. v. Mastro Masonry Contractor*, 885 A.2d 1034, 1039 (Pa. Super Ct. 2005). The Court believed this issue was resolved when the Plaintiffs filed their *Supplemental Transfer Chart* and ostensibly represented that they were no longer pursuing a breach of contract claim in this case. Assuming the Plaintiffs no longer were contending that an agreement existed between the Parties in this regard it would then follow that there was no longer a legal impediment to a finding of unjust enrichment on that basis. Therefore, assuming the foregoing scenario existed, the point raised by Theisen would have been rendered moot.

Going into the argument on the *Motion*, the Court was therefore prepared to deny Theisen's *Motion* on that point because Plaintiffs had dropped any assertion of a contract. At the argument, however, and despite apparent statements to the contrary in the *Supplemental Transfer Chart* (¶¶ 4, 5 and 7), Counsel for Plaintiffs represented to the Court that they were, in fact, continuing to pursue the contention that an "agreement" existed between Theisen and Wobb with respect to payments made to her and that she had violated that agreement by keeping the payments for herself.[7] The Court pressed Counsel on this point and the assertion was unequivocal. As such,

---

[7] *See Audio Transcript* of proceeding held April 13, 2009 at 2:14:00, et seq.

9

it will be treated as a judicial admission binding on the Plaintiffs. *See, e.g., In re Stephenson*, 205 B.R. 52, 55, n. 2 (Bankr. E.D. Pa. 1997).

The admission by Plaintiff whereby they continue to contend there was an agreement with Theisen as to disposition of the payment proceeds requires the Court to reevaluate its tentative intent to deny summary judgment on the constructive/resulting trust claims. Pennsylvania law is clear that unjust enrichment remedies are not available when the relationship of the parties concerning the transferred property is governed by an express contract. *See Diener Brick, supra. See also, e.g., Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super 2004)("the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist."). Although Plaintiffs might prefer not to refer to the alleged agreement as an express contract, it is difficult to see how else it would properly be characterized. *See also, e.g., Second Amended Complaint* at ¶¶ 70-72 (describing the alleged understanding as a "valid and binding oral contract").

The judicial admission by Plaintiffs' Counsel thus puts the Court in a very awkward position since in deciding the *Motion* it must therefore assume there was a contract between the Parties as Plaintiffs contend. The alleged existence of a contract governing the Parties' relationship concerning payments to Theisen would thus require the grant of summary judgment in favor of Theisen on the constructive/resulting trust claim. Such an Order might result in Plaintiffs losing the opportunity to pursue a potentially valid breach of contract claim arguably buried as an alternatively pled claim in the current *Second Amended Complaint* but not preserved in the *Transfer Chart* or *Supplemental Transfer Chart* as the Court had understood them prior to the argument. Although the

Court continues to believe its initial reading of these documents was the most reasonable one, to avoid any unfair prejudice to Plaintiffs flowing from the inartful language of their Counsel,[8] the Court will give the benefit of the doubt to Plaintiffs and assume the breach of contract claim has been preserved.

In resolving the *Motion* the Court is required to construe all material facts in a light most favorable to the non-moving party. For that reason alone, the Court will deny the *Motion*, provided however, Plaintiffs will be required to re-plead their case allowing them a final opportunity to "get it right." This will be accomplished by separate order. Plaintiffs' compliance therewith will be strictly observed. Failure to finally "get it right" consistent with the pleadings, admissions and affidavits on record and rulings made to date, may result in dismissal of any non-conforming claims. *See, e.g., Taylor v. City of Cleveland*, 2006 WL 1982968 (N.D. Ohio 2006).

Theisen's final point in seeking summary judgment relates to a witness challenge. Theisen is challenging the qualifications, credibility, and fitness of two of Plaintiffs' proposed expert witnesses. As an initial matter it is puzzling as to why this matter has even been raised in a motion for summary judgment rather than in a "*Daubert*" motion in limine. Furthermore, even if the Court overlooks this procedural irregularity, the purpose of the *Daubert* filter is to protect juries from being misled by technical evidence of dubious merit. Since this will be a bench trial the Court may hear the evidence at that time subject to any other applicable objections, determine its admissibility,

---

[8] By way of further explanation, in directing the submission of the *Supplemental Transfer Chart* the Court stated that it read the *Transfer Chart* as limiting Plaintiffs' claims to conversion and constructive/resulting trust. *See* Document No. 211. When Plaintiffs filed the *Supplemental Transfer Chart* they seemed to confirm that the Court's understanding was correct. The Plaintiffs made no mention of a breach of contract claim and stated they were not pursuing any other claims "different or inconsistent" with conversion or constructive/resulting trust that may have been articulated within the *Second Amended Complaint*. *See* Document No. 213. Since under Pennsylvania law breach of contract is clearly inconsistent with the constructive trust claim, the Court properly assumed that Plaintiffs had dropped that claim until the comments of Counsel at the argument.

and if admitted, give it the weight it deserves. *See E.E.O.C. v. Novartis Pharms. Corp.*, 2008 WL 2845077 (W.D. Pa. 2008).

## CONCLUSION

With respect to the first three points pressed by Theisen in her *Motion*, the Court finds that there are material factual issues that prevent the entry of summary judgment in this case. As a result, the case will be scheduled for trial, the Defendant having failed to properly support her *Motion* for summary judgment. With respect to the fourth point, concerning Theisen's challenge to the qualifications, credibility, and fitness of two of Plaintiffs' expert witnesses, the Court will also deny the *Motion*, choosing to hear the witnesses (subject to other objections that Theisen may raise) at the bench trial to be held and, if allowed, give such testimony the weight it deserves. Although the last point would more properly have been brought in a separate *Daubert* motion pursuant to *Fed.R.Civ.P. 56(d)(1)*, in order to "shape the litigation", the Court elects to rule on and dispose of this issue at this time. *See In re Jacobs*, 382 B.R. 147, 153 (Bankr. E.D. Pa. 2009).

## ORDER

*AND NOW*, this **17th** day of **April, 2009**, for the reasons stated above, it is **ORDERED, ADJUDGED and DECREED** that the **Motion for Summary Judgment** filed at Document No. 202 is **DENIED**. A separate Order will be issued directing Plaintiffs to file their *Third Amended Complaint* and *Final Transfer Chart*.

Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
    Robert O Lampl, Esq.
    William R. Lauer, Esq.
    William Weiler, Jr., Esq.
    Matthew M. Pavlovich, Esq.
    James R. Cooney, Esq., 960 Penn Avenue, Suite 1200, Pittsburgh, PA 15222